# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-21-00246-PRW |
| ) | |
| JERMAINE LUCAS PORTILLO, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Jermaine Portillo was playing slots at the Comanche Casino when he was approached by three Comanche Nation Police officers. The officers patted Portillo down for weapons and discovered a concealed firearm, which Portillo—a convicted felon—is barred from possessing. Before the Court is Portillo's Motion to Suppress (Dkt. 27), seeking suppression of the firearm, all other physical evidence discovered on Portillo's person, and Portillo's incriminating statements. For the reasons below, the motion is **DENIED**.

### *Background*

The undisputed facts are as follows. On August 9, 2021, Comanche Casino employees observed—via the casino's video surveillance system—a man enter the casino with a concealed handgun. Carrying a concealed dangerous weapon in public is a violation of Title 2, § 4.156 of the Comanche Nation Criminal Code. No evidence indicates that at that time any casino employee approached the man or confirmed the firearm's presence in any way beyond the initial observation via the video surveillance system. Four days later,

1

on August 15, 2021, casino employees saw the same man enter the casino again. Concerned that he might again be armed, the casino notified the Comanche Nation Police, who dispatched officers Michael Harjo, Lacey Pueblo, and Riley Love to the scene. The Comanche Nation Police were particularly concerned with the report as shots had been fired at officers in the casino parking lot a few weeks earlier.

Once the officers arrived, they reviewed the surveillance video and proceeded to the south room of the casino. There, a man matching the physical description provided by casino employees—Defendant Portillo—was seated at a slot machine. Officer Harjo approached Portillo and asked Portillo to remove his hands from his hoodie pocket and whether he was carrying a weapon. Portillo denied having a weapon and refused to keep his hands away from his pockets, reaching back into his pocket multiple times. Officer Harjo subsequently instructed Portillo to place his hands on the slot machine and patted Portillo down for weapons, discovering a loaded Taurus 9mm pistol tucked in his waistband. The officers arrested and Mirandized Portillo, who waived his rights, provided an incriminating statement, and consented to a further search. This search uncovered drug paraphernalia and small quantities of methamphetamine and marijuana. Portillo now seeks suppression of all evidence, arguing that the officers lacked reasonable suspicion to conduct the patdown search and that the improper search tainted the subsequent arrest and discovery of other evidence and incriminating statements.

*Discussion*

Customarily the Court will hold an evidentiary hearing to consider a motion to suppress evidence. However, the decision on whether to hold an evidentiary hearing is

committed to the Court discretion,[1] since an evidentiary hearing is only needed when there are disputed factual allegations that are "sufficient definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue."[2] Here, both the United States and Portillo identified fundamentally identical material facts in their briefs and both parties indicated to the Court that there were no material disputed facts pertaining to the search. The Court therefore exercises its discretion to resolve the legal question presented without an evidentiary hearing.

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures,"[3] such as searches or seizures conducted "without prior approval by judge or magistrate."[4] However, there are "a few specifically established and well delineated exceptions" to this general rule.[5] One such exception is a *Terry* stop. If an officer "observes unusual conduct which leads him reasonably to conclude in light of his experiences that criminal activity may be afoot," the officer is authorized to briefly stop the suspicious individual and make "reasonable inquiries."[6] Furthermore, if the officer is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer is

---

[1] *See United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995).

[2] *Id.* (quoting *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).

[3] U.S. CONST. AM. IV.

[4] *Thompson v. Louisiana*, 469 U.S. 17, 19–20 (1984) (per curiam).

[5] *Id.*

[6] *Terry v. Ohio*, 392 U.S. 1, at 30 (1968).

authorized to conduct a patdown search to "to determine whether the person is in fact carrying a weapon"[7] so that "the officer [may] pursue his investigation without fear of violence."[8] To conduct a patdown search, an officer needs on "reasonable suspicion,"[9] which is only a "minimum level of objective justification"[10] that "need not rise to the level required for probable cause"[11] and "falls considerably short of satisfying a preponderance of the evidence standard."[12] The inquiry is "based on the totality of circumstances" including "an officer's reasonable inferences based on training, experience, and common sense."[13] And reasonable suspicion may exist "even if it is more likely than not that the individual is not involved in any illegality."[14] The United States bears the burden of proving the "reasonableness of the officer's suspicion"[15] by pointing to "specific, articulable facts," not just "unparticularized hunches."[16]

The crux of Portillo's argument is that at the moment of the patdown search, the officers had no articulable suspicion—instead, only "surmise and hunches"[17]—he was

---

[7] *Id.* at 24.

[8] *Adams v. Williams*, 407 U.S. 143, 146 (1972).

[9] *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007).

[10] *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1260 (10th Cir. 2006).

[11] *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

[12] *Id.*

[13] *Rice*, 483 F.3d at 1283.

[14] *United States v. Albert*, 579 F.3d 1188, 1197 (10th Cir. 2009).

[15] *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010).

[16] *Id.* (citing *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994)).

[17] Def.'s Mot. to Suppress (Dkt. 27), at 6.

armed when they approached him. The United States responds that given the existing totality of circumstances, Officer Harjo had reasonable suspicion to detain and frisk Portillo once Portillo disobeyed Officer Harjo's commands by repeatedly reaching for his pocket.

The Court begins the inquiry by examining the articulable facts or factors weighing in favor of reasonable suspicion that were known by the officers when the patdown occurred.

*First*, when the officers approached Portillo, they knew that an unknown suspect had fired shots at police at this location not long ago. This gave the officers "ample reason to fear for [their] safety"[18]—particularly given that the officers were responding to a report of a casino patron suspected of bringing a gun into the casino—which is a factor that weighs in favor of reasonable suspicion.[19] The Tenth Circuit recently recognized that "the officer-safety rationale can overcome even 'limited specific information [that] . . . an individual was armed or dangerous.'"[20]

*Second*, when the officers approached Portillo, they knew that he had previously been seen with a firearm on casino property—a violation of the Comanche Nation Criminal Code. While prior criminal conduct alone is insufficient to create reasonable suspicion,[21] when "in

---

[18] *Adams*, 407 U.S. at 148.

[19] *Id.*

[20] *United States v. Gurule*, 935 F.3d 878, 885 (10th Cir. 2019).

[21] *See United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994).

conjunction with other factors" prior criminal conduct "contributes powerfully to the reasonable suspicion calculus."[22]

*Third*, when Officer Harjo began conversing with Portillo, Portillo repeatedly reached back to his pockets and put his hands in his pockets. Such actions have been recognized as "nervous and evasive behavior" in the context of the reasonable suspicion determination.[23] While again, "[n]ervousness alone cannot support reasonable suspicion,"[24] its presence is another indicium weighing in favor of reasonable suspicion when combined with other facts. Furthermore, in this context, the Court "defer[s] to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions" and weigh them accordingly.[25]

*Fourth*, strengthening the pertinent factor of "nervous and evasive behavior"—is the context in which Portillo reached his hands back toward his pockets. More specifically, he did so after a direct request from a police officer that he keep his hands out of his pockets. Given the context of the situation and the officer-safety rationale already in play, Portillo's actions reasonably strengthened the officers' conclusion that he might be armed. In a very similar case, *United States v. Harris*,[26] after the officer requested the suspect to take his

---

[22] *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005) (citing *Sandoval*, 29 F.3d at 542).

[23] *United States v. Harris*, 313 F.3d 1228, 1236 (10th Cir. 2002).

[24] *United States v. Salzano*, 158 F.3d 1107, 1113 (10th Cir. 1998).

[25] *Santos*, 403 F.3d at 1124 (quoting *United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996).

[26] 313 F.3d 1228 (10th Cir. 2002).

6

hands out of his pockets and the suspect refused to do so, the officer "was reasonably justified in believing that [the suspect] might be armed and dangerous."[27]

Considering that reasonable suspicion "is not, and is not meant to be, an onerous standard,"[28] the Court concludes that the totality of the circumstances and Officer Harjo's experience and discretion—particularly when viewed alongside the heightened officer-safety rationale—combined to give Officer Harjo reason to believe Portillo might be armed in violation of tribal law and might be a danger to the officers or to others. Accordingly, the Court finds that the initial conversation with Portillo and subsequent detention and patdown did not violate the Fourth Amendment.

Neither of Portillo's ancillary arguments are availing. Relying on *Morris v. Noe*,[29] he argues that the patdown search involved "forceful techniques"[30] that transformed the *Terry* stop into a full arrest before the officers had probable cause to arrest him. However, this principle is derived from *United States v. Melendez-Garcia*,[31] where the Tenth Circuit observed that the "use of firearms, handcuffs, and other forceful techniques" could, but "do[] not necessarily," transform "a *Terry* detention into a full custodial arrest.[32] Here, there is no evidence that the officers brandished firearms, handcuffed Portillo, or did anything other than ask him to place his hands on the slot machine and then frisked him for weapons.

---

[27] *Id.* at 1236.

[28] *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015).

[29] 672 F.3d 1185, 1192 (10th Cir. 2012).

[30] *Id.*

[31] 28 F.3d 1046 (10th Cir. 1994).

[32] *Id.* at 1052.

Accordingly, there is no evidence that Portillo was effectively under arrest prior to the discovery of the illegal firearm. Portillo also argues that the post-arrest drug evidence and incriminating statements should be suppressed as fruit-of-the-poisonous tree. But given the Court's conclusion that the tree wasn't poisonous, that argument must too fail.

### *Conclusion*

Since the United States carried its burden and demonstrated that the officers were appraised of specific, articulable facts that combined to generate reasonable suspicion at the time of the patdown search, the Court finds that the evidence in question was properly discovered in compliance with the Fourth Amendment. Accordingly, the Motion to Suppress (Dkt. 27) is **DENIED**.

**IT IS SO ORDERED** the 4th day of January 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE